UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DR SYSTEMS, INC., | ) | Case No. 09cv1625-H (BLM) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING MOTIONS FOR** |
| v. | ) | **PROTECTIVE ORDER AND TO QUASH** |
| | ) | **THE SUBPOENA SERVED UPON DR.** |
| EASTMAN KODAK CO., | ) | **ELIOT SIEGEL** |
| | ) | |
| Defendant. | ) | [Doc. Nos. 1 and 2] |
| | ) | |

On May 19, 2009, Dr. Eliot L. Siegel filed the instant Motion to Quash the Subpoena Duces Tecum served upon him by DR Systems, Inc. ("DR Systems") in the District of Maryland. Doc. No. 1. Eastman Kodak Company ("Kodak") filed a companion motion seeking an order prohibiting Dr. Siegel's deposition. Doc. No. 2. DR Systems timely opposed the motions [doc. no. 4] and, on June 16, 2009, Dr. Siegel and Kodak replied [doc. no. 6]. On July 24, 2009, the matter was transferred from the District of Maryland to this district and subsequently low-numbered to the underlying case, <u>DR Systems, Inc. v. Eastman Kodak Company</u>, Case No. 3:08cv669-H (BLM). Doc. Nos. 13, 16. The Court took the matters under submission pursuant to Civil Local Rule 7.1(d)(1). Having reviewed the briefing submitted, and for the reasons set forth below, the motions to quash the subpoena and for a protective order are **GRANTED**.

///

## Background

On April 14, 2008, DR Systems filed a Complaint for declaratory judgment asking the Court to declare Kodak's patent, U.S. Patent No. 5,414,811 (hereinafter "the '811 patent"),[1] invalid and to find that DR Systems did not infringe the '811 patent.  Case No. 3:08cv669-H (BLM), Doc. No. 1.  On May 7, 2008, Kodak answered and counterclaimed for declarations of the '811 patent's validity and DR Systems' infringement. Id., doc. no. 9.  On June 20, 2008, the Court issued a Case Management Order requiring that all experts be identified by March 16, 2009.  Id., doc. no. 15.  Neither party identified Dr. Siegel as an expert.  Doc. No. 1, Ex. U (DR Systems' Initial Expert Disclosures).  On April 22, 2009, DR Systems served a subpoena duces tecum on Dr. Seigel, a University of Maryland Professor and Vice Chair of the Information Systems Department of Diagnostic Radiology, and an expert witness in previous litigation between Kodak and DR Systems.  Doc. No. 1.

DR Systems contends that its subpoena is proper because it is seeking Dr. Siegel's testimony as a fact witness, not an expert witness. Doc. No. 4 at 2-3.  DR Systems states that the deposition testimony would "be narrowly focused to: 1) the identification of medical imaging systems prior to November 1991 and 2) the explanation of such systems and discussion of any documents contemporaneous to such systems."  Id. at 4.  DR Systems asserts that Dr. Siegel has personal knowledge of such information because he has worked in this field for more than twenty years.  Id. at 4-5.  DR Systems contends that such testimony is relevant to its "obviousness analysis," which, in turn, "is directly relevant to the invalidity of Kodak's patent."  Id. at 5.

Dr. Siegel responds that DR Systems improperly seeks information

---

[1] The '811 patent concerns technology for displaying digital images.  Doc. No. 1.

that is solely the subject of expert testimony.  Doc. No. 1 at 7.  Kodak points out that Dr. Siegel

> is not, and has never been, a Kodak employee.  He has nothing to do with the patent-in-suit and has no knowledge of that patent.  [He] is not, and has never been, an employee of DR Systems and there is no reason to believe he has knowledge of DR Systems' accused products.  Nor is there any reason to believe that [he] has knowledge of any prior art that might have been disclosed by DR's invalidity contentions...[i]n short, [he] has nothing to do with this case.

Id. at 6.  Dr. Siegel confirms that he "was not involved in the development of the invention described in the '811 Patent" and that he had not seen a copy of the patent prior to the execution of his declaration.  Id., Ex. P (Declaration of Eliot L. Siegel, M.D.).  Dr. Siegel explains that in order to testify on the identified subjects, he would have to conduct research to familiarize himself with the terms of the '811 patent and with any "prior art" that may have been available.  Id.  He also asserts that it would take him "many hours" to search for and locate any potentially responsive documents.  Id.  As such, Dr. Siegel and Kodak contend that "the purpose of the subpoena ... is to obtain testimony about 'obviousness' and 'secondary considerations,' topics that are uniquely the subject of expert testimony."  Doc. No. 1 at 7.  Because Dr. Siegel was not identified as an expert by either party, he asks the Court to enter a protective order quashing the subpoena duces tecum served upon him.  Id. at 9, 21-22.

### **Legal Standard**

The scope of discovery is defined by Federal Rule of Civil Procedure 26(b).  Pursuant to that rule, litigants may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense."  Fed.R.Civ.P. 26(b)(1).  Relevant information for discovery purposes includes any information "reasonably calculated to

lead to the discovery of admissible evidence." Id.

District courts enjoy broad discretion both to determine relevancy for discovery purposes, see Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002), and to limit discovery to prevent its abuse. See Fed.R.Civ.P. 26(b)(2). For example, a court may limit the scope of any discovery method if it determines that the discovery sought is "unreasonably cumulative or duplicative," or is obtainable "from some other source that is more convenient, less burdensome, or less expensive." Fed.R.Civ.P. 26(b)(2)(C). Similarly, district courts are directed to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." Id.

Under Rule 45, any party may serve a subpoena commanding a non-party "to attend and testify" or to "produce designated documents." Fed.R.Civ.P. 45(a)(1)(A)(iii). Any such subpoena is subject to the relevance requirements set forth in Rule 26(b). Fed.R.Civ.P. 26(b)(1). If requested, a court may quash or modify the subpoena for a variety of reasons, including that the subpoena "subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A). A party cannot simply object to a subpoena served on a non-party, but rather must move to quash or seek a protective order. See Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C.D. Cal. 2005). The party who moves to quash a subpoena has the burden of persuasion. Id. at 637.

Courts have broad discretion to determine whether a subpoena is unduly burdensome. See Exxon Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 779 (9th Cir. 1994). For example, a subpoena is unduly burdensome where it seeks to compel production of documents regarding topics unrelated to or beyond the scope of the litigation. See Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 813-14 (9th Cir. 2003)

(holding subpoenas properly quashed where their overbreadth led the court to conclude that subpoenas were "served for the purpose of annoying and harassment and not really for the purpose of getting information."). Again, the moving party bears the burden of establishing that a subpoena is unduly burdensome. See F.D.I.C. v. Garner, 126 F.3d 1138, 1146 (9th Cir. 1997).

Finally, Federal Rule of Civil Procedure 45(c)(3)(B)(ii) authorizes a court to modify or quash a subpoena if it requires disclosure of "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." The advisory committee note clarifies that the determination "should be informed by the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony...." Fed.R.Civ.P. 45(c)(3)(B)(ii) advisory committee's note (citations and quotation marks omitted).

## Discussion

The outcome of these motions hinge on the distinction between percipient and expert witness testimony. While the Federal Rules of Evidence do not explicitly define "expert testimony," they provide that it encompasses any helpful "scientific, technical, or other specialized knowledge," whether presented in the form of an opinion "or otherwise." Fed.R.Evid. 702. Generally, expert testimony is testimony that a witness prepares using an analysis based on specialized knowledge. See e.g., Hynix Semiconductor Inc. v. Rambus, Inc., 2009 WL 230039, *10-11 (N.D.Cal. 2009).[2] In contrast, percipient witness testimony is based on

---

[2] Indeed, the purpose of the Rule 26(a)(2) disclosure requirement is to prevent surprise testimony by ensuring that opposing parties are aware of the nature of the expert opinions prior to trial. See Fed.R.Civ.P. 26(a)(2); Britz Fertilizers, Inc. v. Bayer Corp., 2009 WL 1748775, *3 (E.D. Cal. June 17, 2009).

the first hand experience of the witness, i.e., the observations and conduct of the witness. See Fed.R.Evid. 701; Britz Fertilizers, Inc. v. Bayer Corp., 2009 WL 1748775, *3 (E.D. Cal. June 17, 2009).

Here, Dr. Siegel declares that he was not involved in the development of the invention described in the '811 patent and has no personal knowledge of the '811 patent. Doc. No. 1, Ex. P. DR Systems does not provide any contradictory information, other than to state that "it has been difficult to locate independent third persons who have actual personal knowledge before November 1991 of working with digital medical imaging devices. Dr. Siegel is such a person with access to this knowledge and documents." Doc. No. 4 at 5. Such a general statement does not transform Dr. Siegel into a percipient witness subject to subpoena. See Chavez v. Board of Educ. of Tularosa Mun. School, 2007 WL 1306734, *2, 8 (D.N.M. Feb. 16, 2007) (quashing the deposition of an unretained expert who had no knowledge of the underlying facts of the case and was never employed by a party to the dispute).

Moreover, Dr. Siegel declares that he would have to conduct research and analysis before he could provide the requested testimony. Doc. No. 1, Ex. P; see also, doc. no. 4, exs. D-F (email correspondence confirming that Dr. Siegel would have to conduct research and that DR Systems would pay for such work). Such preparation is characteristic of expert testimony. Hynix Semiconductor, 2009 WL 230039, at *11 ("As a general rule of thumb, the court understands 'expert testimony' to be testimony that a witness prepares, as opposed to testimony of what a witness observes."). In fact, it appears that to the extent Dr. Siegel has relevant information, he possesses it via his expertise in the field and "years of study and research," rather than any percipient observations. Doc. No. 1 at 12 and Ex. P; see Glaxosmithkline Consumer

Healthcare, L.P. v. Merix Pharmaceutical Corp., 2007 WL 1051759, *3, 5 (D.Utah April 2, 2007) (denying motion to compel deposition when deponent could testify about facts helpful to party's theory of the case that "came to his attention by his study independent of any party in the case.").

Additionally, DR Systems explains that the requested testimony is relevant to obviousness and invalidity allegations. Doc. No. 4 at 5. The Court finds that such information is typical of that elicited from experts in patent cases. See Hynix Semiconductor 2009 WL 230039, at *10 ("[T]he Federal Circuit recently remarked that a '[non-expert]' may not testify to...'obviousness, or any of the underlying technical questions'"); Marine Polymer Technologies, Inc. v. HemCon, Inc., 2009 WL 801826, *5 (D.N.H. March 24, 2009) ("A witness's testimony about the obviousness of an invention, in patent litigation, however, requires 'highly technical and specialized knowledge' that is beyond the scope of Rule 701.").

Because Dr. Siegal had no involvement with the patents or inventions at issue in this litigation, and his proposed testimony is not based on percipient observations but developed over time using his "technical" or "specialized knowledge" and buttressed with additional investigation and research, it is "expert testimony" as defined by Rule 702. Fed.R.Evid. 702; see Hynix Semiconductor, 2009 WL 230039, at *10-11. The Court will not allow DR Systems to solicit such testimony from Dr. Siegel as he was not timely identified as an expert witness by either party and DR Systems has not shown a "substantial need" for such testimony. Fed.R.Civ.P. 45(3)(C)(1).

To the extent that DR Systems is seeking true "factual" testimony from Dr. Siegel, the Court declines to allow DR Systems to engage in a fishing expedition this late in the case. See Rivera v. NIBCO, Inc.,

364 F.2d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expedition[s].'"). In justifying their subpoena, DR Systems explains that "it is possible that Dr. Siegel may also have knowledge about the existence of a prior art device of which DR Systems is not yet aware." Doc. No. 4 at 5. DR Systems also states that it wants to "explore Dr. Siegel's recollection" of devices and systems available in the pre-November 1991 time frame. Id. However, fact discovery has ended and DR Systems acknowledges that it already has hired an expert to testify about "what the hypothetical 'persons of skill in the art' knew or did not know" during the relevant time frame. Id. at 11. Therefore, any percipient, relevant testimony Dr. Siegel might be able to provide would be duplicative and cumulative of other discovery and the burden of obtaining such testimony will likely outweigh its benefit. See Fed.R.Civ.P. 26(b)(2)(C).

## Conclusion

For the foregoing reasons, the Court **GRANTS** Dr. Siegel's Motion to Quash the subpoena served upon him and Kodak's Motion for a Protective Order.

**IT IS SO ORDERED.**

DATED: September 14, 2009

BARBARA L. MAJOR
United States Magistrate Judge